FRANK FOSSETT v. THE STATE.

No. 1970.  Decided January 21, 1900.

**1.  Continuance to Corroborate Witnesses.**

On a trial for murder, where one of the defenses was insulting remarks about defendant's wife and stepdaughter, and two witnesses had testified to such remarks and that they had communicated the same to defendant on the day of the killing, and these witnesses were impeached by the State, Held, a first application for continuance good as to diligence should have been granted for other witnesses who could have testified to similar insulting remarks by defendant made to them on different occasions, though they had not communicated the same to defendant. The absent testimony would have tended to corroborate the two impeached witnesses. DAVIDSON, Presiding Judge, dissents; a first application for continuance should not be refused because absent evidence is cumulative.

**2.  Murder—Declarations of Defendant—Motive.**

On a trial for murder, while it is always important to show defendant's malice and state of mind before the killing, yet this can not be done by proving that defendant a few minutes before the killing made a jocular remark about shooting a barkeeper, which remark was not directed by name to deceased, who was not present, and which did not embrace him by intendment, since deceased was not a bartender.

**3.  Same—Insulting Remarks as to Female—Evidence Contradicting Same.**

On a trial for murder, where defendant has proved that deceased had made insulting remarks about his wife and daughter, it was not competent for the State to countervail, contradict, and discredit this testimony by evidence to the effect that long before such remarks were made deceased had made complimentary remarks about said females.

**4.  Witness—Impeachment for Truth and Veracity.**

In impeaching a witness for truth and veracity his reputation up to the very time he testifies is a legitimate subject of inquiry, and the inquiry is not limited to the reputation of the witness anterior to the offense about which he testifies.

**5.  Same—Re-Examination.**

Where an attorney has testified that he was employed to investigate defendant's case in order that he might advise parties as to whether it would be safe to go upon his bond, it was competent upon his examination to prove by him the result of his investigation.

**6. Bill of Exceptions to Questions—Practice on Appeal.**

Where a bill of exceptions is taken to a question asked a witness, the court on appeal is not called upon to decide the admissibility of the question unless the answer the witness was expected to have given is stated in the bill.

**7. Murder—Manslaughter—Charge.**

On a trial for murder, where the court has correctly charged the law of manslaughter upon a given state of facts, it was not error to further instruct the jury that notwithstanding the facts stated, if defendant's mind was not excited by passion but was capable then of cool reflection, and he formed the intent to kill under such circumstances, he would not be guilty of manslaughter but of murder.

APPEAL from the District Court of Tarrant. Tried below before Hon. W. D. HARRIS.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Green Durrett, alias Doc Carver, on the 29th day of May, 1899, by shooting him with a pistol.

The record is very voluminous, but the immediate facts attendant upon the homicide may be stated briefly as follows, to wit: Appellant, Fossett, and deceased, Durrett, alias Carver, were both gamblers. Some time before the homicide deceased had been employed by appellant in his gambling-house and he had boarded and roomed at appellant's home. From some cause or other appellant some time prior to the killing had discharged deceased from his employment and ill feelings between them ensued. Appellant had gone off on a trip out of the State, and seems to have been financially broken and lost all of his property in the gambling establishments in which he had been interested. During his absence and after his return to Fort Worth the deceased had time and again, whenever appellant's name was mentioned, denounced him in most violent terms, accompanied by serious threats against him. On more than one of the occasions, and upon the very day before the killing, he had, in denouncing appellant, also denounced the wife and stepdaughter of appellant as whores and his house as a whorehouse. This conduct and language was communicated to appellant on the day of and previous to the killing. The parties met at the door of the Palais Royal Saloon. Appellant and one or two friends were coming out of the door and deceased had just came down the street and reached a point upon the sidewalk opposite the door. Deceased made some remark to one of the parties about a pair of pants, when appellant, who was standing in the doorway, which was elevated about six inches above the sidewalk, asked him what he had to say or what he had said about the house or his house. To this deceased replied that he would say what he d—d pleased. At that appellant gave him a severe kick upon the testicles. Deceased rushed upon and grabbed him and the parties scuffled back into the saloon, fighting. Finally appellant succeeded in drawing his pistol and shot deceased several times, and from the wounds thus inflicted deceased died in a very few moments.

41st Crim. Rep.—26

The particular facts attendant upon the questions discussed by the court in its opinion will be found sufficiently stated in the briefs of counsel and in said opinion.

*F. G. Thurmond, B. D. Shropshire,* and *Hurt, Stine & Watts,* for appellant, submitted the following assignment of errors, which we reproduce as a full epitome of the case as presented on appeal, to wit:

1. The court committed an error in overruling appellant's motion for a continuance, said motion being made for the want of the witnesses Lee Holloway and Walter Jones, they being material witnesses, corroborative of the two main defense witnesses, C. A. Kinney and John Hanna.

2. The court committed an error in admitting the testimony of Mrs. Nichols, over appellant's objection, as to a conversation between said witness and the deceased Durrett, alias Carver, about his relatives' address. This conversation was hearsay, irrelevant, and prejudicial to defendant.

3. The court committed an error to appellant's prejudice and great injury, in allowing the State witness F. A. Miller to testify, in answer to questions propounded by the prosecuting attorney, to a certain conversation which the witness heard the appellant make, and in said conversation appellant said that he would like to be out in the country, but said it wouldn't suit him, either; said he was thinking about or would like to, don't know which; but said it wouldn't suit him, either, unless he had a saloon out there so he could kill a bartender every week or so. Said he wanted to shoot him in the belly. Appellant said this in a laughing way. Deceased was not present; deceased was not a bartender, and this was prior to the difficulty, some five or ten minutes. This was error, and worked injury to the appellant before the jury. Appellant had no reference to the deceased; deceased was not present; and this evidence was inadmissible, because it was irrelevant, hearsay, and was calculated to prejudice appellant before the jury. It was an independent threat, and whether he desired to kill a bartender or not, had nothing to do with this case. Appellant strenuously objected to this testimony, but said objection was overruled, and the witness allowed to testify.

4. The court committed error to appellant's injury in sustaining the objection of the county attorney objecting to the witness H. S. Dillard, county attorney of Bosque County, answering the question that he advised the bondsmen to go on appellant's bond. This was after the prosecuting attorney had caused the witness to testify that he was county attorney of Bosque County, and had received $50 from the parties contemplating going on appellant's bond to investigate the case, and see if they were safe in going on the bond.

5. The court committed an error in refusing to allow the appellant, while he was on the stand, to answer a question. The appellant's counsel propounded this question to appellant: "Was there anything done by the deceased calculated to show that he was trying to get your

gun? If so, what?" To this question the prosecuting attorney ob-
jected on the ground that·it was leading, and the court sustained the
objection. This was not a leading, but a pertinent question.

The court committed an error injurious to appellant in allowing
the witness Mrs. Nichols to testify over the appellant's objection that
she had had a conversation with the deceased Green Durrett, alias Doc
Carver. This is the conversation: "I had a conversation with Doc
Carver, with reference to the appellant's family, on Tuesday, before
he was killed. He was killed the next Monday. He spoke of Mrs.
Fossett, appellant's wife, in the highest terms; said that there wasn't
no better people than Mrs. Fossett and her daughter. I had another
talk with him with reference to the appellant's family prior to that.
I don't remember just how long; perhaps a week or two; don't remem-
ber any after that time." At this point appellant's counsel interposed
the further objection that all of this testimony was too remote, which
said objection was also overruled by the court, and the witness con-
tinued: "He spoke of Mrs. Fossett as being a good woman, and of
her daughter as very kind to him while he roomed there." To said
ruling of the court appellant excepted.

6. The court committed an error to appellant's injury in allowing
the witness John Thrasher, over appellant's objection, to testify as
follows: That on Tuesday, before Doc Carver was killed by appellant,
witness had a conversation with deceased. The county attorney asked
the witness this question: "What did you hear Doc Carver say?" To
this question defendant's counsel objected, on the ground that it was
something that passed between the witness and the deceased. That
it was hearsay; that there was no evidence that·the conversation was
ever conveyed to the appellant or made in his presence; that it proves
nothing in this case that is material; that the appellant is to be
adjudged from his standpoint, and not from what occurred with other
people;·and that this evidence is irrelevant, inadmissible, and preju-
dicial, and that it was too remote. This objection was overruled by
the court, and the witness proceeded: "I just heard him speaking well
of Mrs. Fossett; say what a nice lady she was and her daughter; what
I heard him say several times before that." Defendant excepted.

7. The court committed an error to the injury of appellant in
allowing T. C. Andrews to testify, over appellant's objection. The
witness said within the last six weeks he had had a conversation with
deceased, Carver, about Mrs. Fossett and the appellant's family. The
prosecuting attorney said to him: "Go ahead and detail what was said
by him about Mrs. Fossett." To this question the defendant objected,
on the ground that it was something that passed between the witness
and the deceased; that it was hearsay; that there is no evidence that
the conversation was ever conveyed to the appellant or made in his
presence; that it proves nothing in this case that is material; that the
appellant is to be adjudged from his standpoint, and not what occurred
with other people, and that .this evidence. is irrelevant, incompetent,
inadmissible, and prejudicial, and that it was too remote. The court

overruled appellant's objection, and appellant excepted. The witness. T. C. Andrews said deceased said Mrs. Fossett was a perfect lady, a good woman; that appellant had a nice family, etc.

8. The court committed an error to appellant's prejudice in allowing the witness Miss Bertha Rabb to testify, over the appellant's objection, the following testimony: That on the third or fourth day of the cattlemen's convention she had a conversation with deceased, Doc Carver, in which Mrs. Fossett's name was mentioned. The prosecuting attorney asked her the question: "What was the substance of that conversation with reference to Mrs. Fossett?" To this question the appellant's counsel objected, on the ground that it was something that occurred between the witness and the deceased; that it was hearsay; that there is no evidence that the conversation was ever conveyed to the appellant or made in his presence; that it proves nothing in this case that is material; that the appellant is to be adjudged from his standpoint, and not from what occurred with other people; that this evidence is irrelevant, incompetent, inadmissible, and prejudicial, and that it is too remote. This objection was overruled by the court, and the witness answered as follows: "He just said that there wasn't a nicer woman living than Mrs. Fossett and her daughter, Miss Ada Thomas." To which ruling of the court the defendant excepted.

9. The court committed an error to the prejudice of appellant in allowing R. F. Milam, a State's witness, to testify, over the objection of appellant, as follows: After John Hanna, a witness for the defense, had testified, the State, by direct examination, asked said witness these questions: "Judge Milam, you know John Hanna?" Witness answered, "Yes, sir." Question by State: "Are you acquainted with his general reputation in the community where he lives, for truth and veracity?" Witness answered, "Yes, sir." Question by State: "Is it good or bad?" Answer, "Bad."

Cross-examination by appellant: "Did you ever hear any man question it before this killing?" Answer by witness Milam, "No, sir."

Redirect examination by the State: Question: "Hear anybody question it since?" Answer by witness, "Yes, sir." Defendant's counsel: "I object, and ask the court to exclude said witness' evidence." The court replied, "I will give you a bill, gentlemen." The defendant's counsel replied: "The witness says before this killing he never heard his reputation questioned, but since has." To which the court said: "The stenographer may put it down; the witness answered that he never heard the credibility and veracity of Hanna questioned before he testified in the examining trial in this cause." Then the appellant renewed his motion to exclude this testimony, which said motion was by the court overruled, and appellant excepted.

10. The court erred in overruling appellant's motion to strike out exhibit B to State's replication to appellant's motion for a new trial, and all that portion that purports to set out Sebe Maddox's evidence on the examining trial of this case.

11. The court erred in sustaining the objection of State's counsel

to appellant, while he was on the witness stand, answering the following question propounded by appellant's counsel, to wit: "Was there anything done by deceased calculated to show that he was trying to get your gun; if so, what?" To this question the State objected on the ground that it was leading. Said objection was by the court sustained, and this answer ruled out. This was error, because appellant would have testified that deceased was trying to get his gun, as he believed, to kill him.

12. The court committed an error in overruling appellant's motion for a new trial, for the above errors pointed out and assigned. They were all raised and pointed out in said motion to the court, and the other errors committed upon the trial of this cause, also the errors in the court's charge to the jury upon the law of this case. Whereupon appellant submits, that for the above assigned errors and others apparent of record this cause should be reversed and remanded for a new trial.

*Jas. W. Swayne,* County Attorney, and *Rob't A. John,* Assistant Attorney-General, for the State, filed an able and elaborate argument on the State's motion for a rehearing after the court's opinion below was delivered. The Reporter regrets that owing to its length he can not reproduce this argument and that he can not condense it without injustice to its force.

(The State's motion for a rehearing was overruled without a written opinion.—Reporter.)

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty years, and he prosecutes this appeal.

Appellant's first assignment of error involves the action of the court overruling his motion for continuance, which was again brought to the attention of the court in the motion for new trial. The application for continuance was based on the absence of Lee Holloway and Walter Jones. Appellant's main defense was that the killing was only manslaughter, because deceased had made remarks of an insulting character in regard to his (appellant's) wife and stepdaughter, and that these remarks were communicated to him on the day of the homicide; that the killing occurred on his first meeting with deceased thereafter. Appellant proved by two witnesses, Kinney and Hanna, the insulting language by deceased to them regarding appellant's female relatives, and the communication thereof by them to appellant on the day of the homicide. An attack was made by the State on the testimony of these witnesses, against Kinney on the ground that he had formerly been a partner of appellant, and against Hanna by direct impeachment. This was the first application for continuance, and, while neither of the absent witnesses communicated to appellant the conversations by deceased with them in regard to the character of appellant's wife and daughter, yet the declarations made by deceased to them were on dif-

ferent occasions, and so not strictly cumulative, and are of the same character, and so would have tended to corroborate the two witnesses of defendant who testified on the trial. It occurs to us that this testimony was of a material character, and that the diligence used to secure their evidence was reasonable.

Over appellant's objections, F. A. Miller was permitted to testify that a few minutes prior to the homicide appellant remarked to him (witness) that he would like to have a saloon out in the country, so he might shoot a bartender in the belly. It was shown in this connection that deceased was not present, and the conversation was not concerning him; that he was not a bartender; and that the remark was made in a jocular way. The court, approving the bill, states that he admitted the testimony because the conversation occurred a very short time, perhaps not exceeding two minutes, before the killing, and after defendant had been told that deceased had been talking about him and his family relatives, and that the testimony was admitted as throwing light upon the state of mind of the defendant. We do not think the court's explanation rendered this testimony admissible. While it is always important to show the state of mind of defendant before the killing, as indicating malice, yet this state of mind must in some manner be directed towards deceased, either by direct expression, or the remark must, within its scope, embrace deceased. Neither of these conditions are shown here. It was not directed towards him by name, nor did it embrace him by intendment, inasmuch as deceased was not a bartender. There was no malignity in the remark, as the witness testified it was jocular. Still it can not be said the remark was without injury to appellant. It may have suggested to the jury that he was a bloodthirsty man, and wanted to kill somebody. In our opinion, it was not admissible. Godwin v. State, 38 Texas Crim. Rep., 466; Strange v. State, 38 Texas Crim. Rep., 280; Holley v. State, 39 Texas Crim. Rep., 301.

Appellant contends the court erred in admitting the testimony of the witnesses Mrs. Nichols, John Fresher, Miss Rabb, and T. C. Andrews as to statements made by deceased, prior to the killing, and prior to the testimony adduced by the State of insulting language by deceased towards appellant's female relatives, and not in the presence and hearing of appellant, to the effect that Mrs. Fossett and her daughter (wife and stepdaughter of appellant) were nice people; that he spoke of them in the highest terms, and said there were no better people than Mrs. Fossett and her daughter. Appellant objected to all this testimony, on the ground it was hearsay, and not made in the presence of appellant or communicated to him, and that it was irrelevant and prejudicial to appellant. The court approved these bills. As to one of them he appended the following explanation: "That it was a question in the case as to what deceased's statement was with reference to Mrs. Fossett and her daughter, and the defendant had introduced Mrs. Fossett, who had sworn that deceased made a threat, on leaving

her house, to get even with her some time, and said testimony of Mrs. Fossett was offered to show that deceased had from that time to the day of his death entertained an ill will towards Mrs. Fossett, and in this manner to give support or plausibility to the contention that deceased did talk to Hanna and Kinney as testified to by them, and said testimony was admissible to throw light, if the jury believed it, or throw light on the question as to whether deceased entertained malice towards Mrs. Fossett." In making this explanation, in our opinion, the court struck the keynote as to its inadmissibility; that is, the effect of said testimony was to suggest to the jury that Hanna and Kinney could not have spoken the truth when they testified as to the statements made by deceased regarding appellant's wife and daughter, and so to discredit their evidence. It will be noted that these conversations which the State was permitted to introduce were no part of the conversations testified about by Kinney and Hanna, but were had long before the declarations of deceased about which they testified; and the fact that deceased may have made complimentary remarks about appellant's wife and daughter previously was not relevant, and was not legal evidence as tending to show that the testimony of these two witnesses was not true, but might be taken by the jury as tending to countervail and disparage their evidence. In our opinion, neither was the testimony admissible as tending to contradict Mrs. Fossett. It was no part of the conversation about which she testified, but made at a different time and place, and there was no attempt on the part of the court to even confine said testimony to a refutation of her evidence.

John Hanna was an important witness for defendant. The State called R. F. Milam to impeach said witness for truth. This witness qualified by stating he was acquainted with the general reputation of the witness Hanna in the community where he lived for truth, and then stated it was bad. On cross-examination of this witness by defendant, it was developed that he had never heard the reputation of the witness Hanna discussed until after the homicide in question. Appellant then moved to exclude the testimony of this witness in regard to the reputation of Hanna for truth, which the court refused to do, and appended an explanation that there was nothing to make it appear that the reputation about which Milam testified concerning the witness Hanna was discussed in connection with the case on trial, and further stated that "the fact the witness learned or heard of the reputation of the witness Hanna since the examining trial did not show that it was made because of anything testified by Hanna on the examining trial." Appellant contends that this testimony was not admissible, because the reputation of a witness for truth is confined to his reputation anterior to the offense about which he testified, and in this connection he refers us to a number of authorities. None of those accessible occur to us to be in point. Reid v. Reid, 17 New Jersey Equity, 103, seems to be the nearest. The facts are not stated, and what we gather from the opinion is simply that the court held

it was not competent for a witness to testify to reputation founded on opinions expressed by others since their former examination in the case; and, furthermore, that it is not competent to send a stranger into the neighborhood of the residence of the witness for the purpose of procuring evidence in the case, and who details the opinions of others thus obtained. And the court then stated that no rule is better settled or founded on clearer principles than that which excludes the testimony touching reputation founded on opinions expressed post litem motam. This opinion refers to 1 Greenleaf, section 461, which merely states the general rule that a witness can be impeached by proof that his general reputation for truth was ,bad in the neighborhood where he lived. Douglass v. Tousey, 2 Wendell, 352, also referred to, is a case of slander, where it was not permitted to prove the general bad character of plaintiff subsequent to the time the alleged slander was uttered, confining such proof prior to that time. The court also stated that the practice of sending a witness into a community to procure testimony in regard to the character or reputation of a party, and then testify to same, after the fact, is not permissible. Such witness should be acquainted with the character, and come from that community. And so in Hopperwood v. State, 39 Texas Criminal Reports, 15. The proof of character offered was the character of defendant for honesty in the community where he lived. It appeared that this proof was acquired by the witness subsequent to the commission of the alleged offense, and we there held such testimony was not admissible. We quote as follows: "Where a defendant is on trial, it is his character prior to the commission of the offense that may be inquired into, and not the character he may have acquired after the commission of the alleged offense, or what was said about his character after that time." We believe the rule there laid down is sound and logical, and should control wherever defendant's character for the trait involved in the accusation is made the subject of inquiry. But here a different question arises; that is, the character of the witness for truth and veracity. The jury are the judges of that, and the question is whether he is entitled to be believed at the time the witness testified, and not at some prior time. Under our system, a witness may testify in the case long after the occurrence, and not infrequently it may be several years before his testimony is produced before the jury, and to hold that an inquiry should not be made as to his reputation for truth and veracity in the neighborhood where he lived at that time, it occurs to us, would be violative of sound principle. True, there may be some danger of fabrication by interested parties subsequent to the transaction about which he testifies, yet, on cross-examination, or the examination of other witnesses, this can always be probed into, and the sources from which the witness may have derived his information shown, in order that the jury may weigh his impeaching evidence. This furnishes no reason why the rule as to the general reputation of a witness for truth may not embrace such

reputation up to the very time the witness testifies. In this action of the court there was no error.

When H. S. Dillard, county attorney of Bosque County, was on the stand, the prosecuting attorney, on cross-examination, proved that he was paid $50 by certain parties in Bosque County to make an investigation of the case against appellant, to determine whether or not it would be safe for the parties who employed him to go on appellant's bond. On re-examination, defendant desired to prove by said witness that he advised his clients it would be safe to go on the bond. This testimony was objected to by the State, and the witness was not permitted to testify. The court, in approving this bill, says "that to have allowed the witness to answer this question would have put before the jury the opinion of the witness as to the merits of the case, which was evidently improper, and the cross-examination of the county attorney did not warrant the admission of this evidence." It occurs to us, if it was relevant to any issue in the case for the State to show by the witness Dillard that he was employed to ascertain whether or not his clients would be safe in going on appellant's bond, that it was equally competent for the witness to state the result of that investigation. Evidently the purpose of the State was to leave the impression on the jury that the witness, after making the investigation, had advised his clients not to go on the bond. It was certainly competent for the defendant to remove this impression from the minds of the jury by competent testimony. In our view, however, none of this testimony was competent.

When Frank Fossett was on the stand on his own behalf, he was asked this question by his counsel: "Was there anything done by deceased calculated to show that he was trying to get your gun? If so, what?" This question was objected to on the ground it was leading, and the court sustained it. We are inclined to the view that this question as presented was somewhat leading in character. Inasmuch, however, as it is not stated what the answer of the witness would have been, we are not called on to decide this matter. The other bill, presenting this matter more fully, was refused by the court, and consequently we can not consider it.

Appellant objected to the twenty-seventh paragraph of the court's charge, which is as follows: "But in this connection you are instructed that, if you believe from the evidence that the defendant had heard that deceased had used insulting words towards or concerning defendant's female relations, and that upon meeting deceased defendant asked him about it and he replied as above mentioned, but believe that neither such information as to insulting words, nor the reply of the deceased, nor any other fact or circumstance, produced at that time the degree of passion herein defined as being necessary to reduce a homicide to the degree of manslaughter, but that in the absence of and without any such passions, and not in his self-defense, defendant kicked the deceased, with the intention of bringing on a difficulty, for

the purpose of killing the deceased in such a difficulty, or inflicting serious bodily harm upon him, and that during such difficulty defendant, in pursuance of such intention, if any, did shoot and kill deceased, then the homicide would not be manslaughter, but would be murder; and, if you find such was the case,—that is, that such was the state of facts, and such was the state or condition of defendant's mind, and such was the intention of defendant at the time he kicked deceased,—then the killing would not be manslaughter, but would be murder, no odds to what extremity defendant may have been reduced during the progress of the difficulty, and no odds what passion may have been aroused during the difficulty." It will be noted that preceding said charge the court had already charged on manslaughter in connection with the same facts embodied in the twenty-seventh paragraph, above quoted. But in said preceding charge the court advised the jury that if, by means of the facts stated, defendant was moved to such a degree of anger, etc., as to be rendered incapable of cool reflection, and under such passion he kicked deceased, and in the difficulty which followed shot and killed deceased, defendant would then not be guilty of any higher grade of homicide than manslaughter. We understand the twenty-seventh paragraph of the court's charge merely to inform the jury that, notwithstanding the facts stated, if defendant's mind was not excited by passion, but he was capable then of cool reflection, and he formed the intent to kill under such circumstances, he would not be guilty of manslaughter, but of murder. In this we do not believe there was error. There are other assignments of error, but, in the view we take of the case, it is not necessary to discuss the same. For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Presiding Judge.—I agree to the reversal, but desire to say: It is not a reason for refusing to grant a first continuance that the absent evidence is cumulative. This only applies to second or subsequent applications to continue. I can not agree to that portion of the opinion intimating to the contrary.