## GEORGE F. FULLER v. THE STATE.

### No. 4020.   Decided November 11, 1908.

**1.—Murder—Evidence—Threats.**

Upon trial for murder it was reversible error to permit a State's witness to testify that some two or three weeks before the homicide, defendant stated to him that he was going to kill a Dutchman, or run him out of the country, there being no reference to the deceased.

**2.—Same—Charge of Court—Manslaughter.**

Upon trial for murder it was error in the court's charge on manslaughter to include therein the clause, "on a provocation given by some other person than the party killed," there being no evidence to justify such a charge.

**3.—Same—Insult to Female Relative—Adequate Cause.**

The law provides that insulting words or conduct of the person killed towards a female relation of the party guilty of the homicide is adequate cause; and it was reversible error in a trial for murder in the court's charge on manslaughter based upon evidence of insulting words or conduct by the deceased towards the defendant, to leave the jury to determine

whether such words or conduct were adequate cause. Following Fuller v. State, 50 Texas Crim. Rep., 14, Stewart v. State, 52 Texas Crim. Rep., 273.

#### 4.—Same—Charge of Court—Reasonable Doubt.

Where upon trial for murder there was evidence requiring a charge upon the law of manslaughter, and the court failed to apply in his charge the doctrine of reasonable doubt to the issue of manslaughter, the same was reversible error.

#### 5.—Same—Charge of Court—Manslaughter—Adequate Cause—Insult to Female Relative.

See opinion of the court for charge on manslaughter based upon insulting language and conduct towards female relative of defendant by deceased which is held as erroneous. Brooks, Judge, dissenting.

Appeal from the District Court of Angelina. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case. See Fuller v. State, 50 Texas Crim. Rep., 14.

*E. B. Robb* and *Geo. S. King,* for appellant.—On question of threats: Holley v. State, 39 Texas Crim. Rep., 301; 46 S. W. Rep., 39; Godwin v. State, 38 Texas Crim. Rep., 466; 43 S. W. Rep., 336; Garrett v. State, 52 Texas Crim. Rep., 253; 20 Texas Ct. Rep., 552. On question of charge on manslaughter: Bays v. State, 50 Texas Crim. Rep., 548; 99 S. W. Rep., 561, and cases cited in opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is the second appeal of this case. On the trial from which appeal results appellant was convicted of murder in the second degree and his punishment assessed at confinement in the penitentiary for fifteen years. A very full and substantially correct statement of the facts of the case will be found in Fuller v. State, 50 Texas Crim. Rep., 14, where the case is discussed at length by Judge Henderson on the former appeal.

Many questions are raised in the record, some of which we shall deem it unnecessary to discuss.

1. Among other matters complained of is the action of the court in permitting the witness Muller to testify that some two or three weeks before the homicide appellant stated to him that he was going to kill a Dutchman, or run him out of the country. It is claimed that this conversation or threat so particularly identified the deceased as to make this general statement admissible. In the case of Godwin v. State, 38 Texas Crim. Rep., 466; 43 S. W. Rep., 336, we held the rule to be that evidence of general threats made by the defendant on trial for murder, when such threats are not shown

to have been directed towards the person slain, or to embrace such person, are inadmissible. Again in the case of Holley v. State, 39 Texas Crim. Rep., 301; 46 S. W. Rep., 39, we said: "Now, upon whom is the burden to show that the threat was directed towards the person slain, or embraced such person? Obviously, upon the State, for no presumptions can be indulged against the appellant. Before the testimony can be admitted, it must appear that the threat was directed towards the person slain." The case of Garrett v. State, 52 Texas Crim. Rep., 255; 106 S. W. Rep., 389, is cited by appellant and seems to be strongly relied on. In that case it seems that one Owens who was testifying for the State, testified that he overheard the defendant talking with another party in which conversation Garrett made threats to kill a "guinea" and that in the opinion of witness he meant this girl, but that he did not know what he meant by saying "guinea." It was, however, shown in the record by some of the testimony that the word "guinea" referred to negro women generally. Objection was urged to this testimony on the ground, as shown by the record, among other things, that it did not sufficiently identify deceased. In discussing this matter, Davidson, P. J., speaking for the court, says: "Without going into a detailed statement of it and the grounds of objection, we are of opinion that this character of threat was not admissible. This has been decided so frequently we deem it unnecessary to cite authorities. Before a threat supposed to have been made by the accused can be used against him in his trial, the evidence must show that the threat was directed against and individuates the deceased. The fact that 'guina' meant negro women is not sufficient." In this case, while the witness Fred Muller was on the witness stand, he testified that he knew appellant and that about two or three weeks before the killing appellant met him in the town of Lufkin and they went into a saloon together and took a drink, and that during this time appellant told him he was going to kill a Dutchman or run him out of the country. This testimony was objected to by appellant on the ground that it did not show any connection with the transaction under investigation or any of the parties, and was wholly irrelevant and immaterial and highly calculated to prejudice the rights of appellant. Thereupon the court intervened and the following colloquy occurred: "The Court. Your statement, as I understand you, is that he told you he was going to kill 'the' Dutchman or 'a' Dutchman or run him out of the country? A. That is what he told me. Q. Did you say 'a' Dutchman or 'the' Dutchman? A. A Dutchman. Q. That was how long before this killing? A. About two weeks as well as I remember. The Court. It will be a question of fact for the jury as to what the meaning was." Thereupon the defendant again stated to the court that they desired to reserve a bill of exceptions

to the admission of this testimony and wanted the bill to further show as to the court's interrogating him whether before or after the killing and whether the statement referred to "a" Dutchman or "the" Dutchman, these being matters not elicited by the State. To which suggestion of counsel the court readily consented. We think probably this testimony was not admissible. It has occurred to us that the decisions of this court, at least in the language of some of them, has carried the rule rather further than, as an original proposition, the writer should have been inclined to go, but where as in this case there is no reference to the deceased, no suggestion in the testimony that his troubles with appellant were the subject of conversation and nothing in the language of the parties to constitute even a remote reference to or connection with the deceased, it would seem under the authorities and in reason, that such a statement ought not to be received. We can well understand how the evident idea of the court below, that it was a question for the jury, might apply if there was enough in the testimony to leave it open to a fair inference that the threats introduced had reference to the deceased. We do not believe, however, that this contention is sustained in the record before us.

2. Serious complaint is made of the charge of the court on the subject of manslaughter. This charge in its entirety, is as follows:

"Manslaughter" is voluntary homicide under the immediate influence of sudden passion, arising from an adequate cause, but neither excused or justified by law. The act of killing must be directly caused by the passion arising out of the provocation. (It is not enough that the mind is merely agitated by passion arising from some other provocation, or a provocation given by some other person than the party killed.)

The passion intended is either of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering it incapable of cool reflection.

By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. Insulting words or conduct of the person killed towards a female relation of the defendant would be adequate cause, such as above spoken of, provided the killing took place immediately upon the happening of the insulting words or conduct, or so soon thereafter as the party killing may meet with the party killed, after having been informed of such insulting words or conduct.

And any condition of circumstances which is capable of creating in the mind of a person of ordinary temper (and does create in the mind of defendant sudden passion, such as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, is deemed adequate cause). And where there are two or more

causes to arouse passion although no one of them alone would constitute adequate cause it is for you to determine whether or not all such causes combined, if any there are, might be sufficient to so do.

In order to reduce a voluntary killing to the grade of manslaughter, it is necessary not only that adequate cause existed to produce the state of mind referred to herein (but also that such state of mind did actually exist at the time of the commission of the offense).

Now, applying the foregoing law of manslaughter to the case before you, you are instructed:

1. If you find that the killing of deceased (if he was killed) would otherwise be murder, then, in order to reduce such killing to the grade of manslaughter, upon the ground of insulting words or conduct towards a female relation of defendant, the following facts must all concur and have existed:

2. That deceased was guilty of insulting words or conduct towards defendant's daughter, Lula Brunsterman (now Johnson) or that defendant had been informed, and in good faith believed, deceased was so guilty.

3. If you believe the witness, Andrew Vinson, on the day and before the hour of the killing told defendant that deceased had said of and concerning defendant's daughter, Lula, in effect and substance that she, Lula, was in a state of pregnancy when deceased married her, the same would be 'insulting words towards a female relation of defendant' and would constitute 'adequate cause' such as is meant by that term used in the definition of manslaughter, if, in connection with what else (if anything) Vinson informed defendant deceased had said, and the other circumstances of the *case and . the relations* of the parties, the same was such provocation as would commonly produce in a person of ordinary temper, *situated as defendant was,* a degree of anger, rage or resentment sufficient to render his mind incapable of cool reflection; and in this connection you are instructed that evidence of the general character of said Lula for chastity and virtue, *if you believe the defendant had knowledge of such character of his daughter,* may be considered by you in order to ascertain the extent of the provocation.

4. That he killed deceased the first time he met with him after he, defendant, had been informed by Vinson of such insulting words of deceased towards or concerning his said daughter, Lula, and in this connection you are instructed that the time intervening between the time defendant was informed of the insulting words and the time of the killing is immaterial; as to the matter of time it is only required that the killing must have been upon the first meeting after information of the insult was communicated to him by the witness, Vinson, hereinbefore referred to, if you believe the matter so communicated by Vinson was under the circumstances,

insulting; and in this connection you are instructed that in judging and deciding whether the matter so communicated to defendant by Vinson was insulting and calculated to provoke the passion of defendant you may look to and consider previous insulting words or conduct (if any there was) of deceased towards Lula, notwithstanding the defendant may be shown to have met with deceased after he had been informed of such previous insults and before the occasion upon which the shooting occurred; and you will also bear in mind that it is immaterial for the purpose of this case, as to whether deceased, Fred Brunsterman, was in fact guilty of such insulting words or conduct, *if any*, imputed to him and upon information of which defendant claims to have acted. If defendant was informed that he, deceased, was so guilty, and in good faith believed and acted upon such information it would avail him the same whether deceased had or had not in fact been guilty of such insults.

5.  That such insulting words or conduct by deceased was the real provocation which induced the killing, and

6.  That when defendant killed deceased, if he did kill him (he was affected by such a degree of anger, rage, resentment or terror as would commonly, in a person of ordinary temper, render the mind incapable of cool reflection).

Now, if you find from the evidence beyond a reasonable doubt, that defendant did voluntarily shoot with a pistol and thereby kill Fred Brunsterman at the place and about the time charged in the indictment, but you further believe that at the time of the killing the defendant was under the immediate influence of sudden passion rendering his mind incapable of cool reflection and aroused by insulting words of or imputed to deceased towards or concerning defendant's daughter, Lula Johnson (then Lula Brunsterman), communicated to defendant by the witness Andrew Vinson to the effect that said Lula was in a state of pregnancy when deceased married her, and that same amounted to 'adequate cause,' and that the killing took place upon the first meeting of defendant with deceased after Vinson had informed defendant of such insult, you will not find defendant guilty of murder but will find him guilty of manslaughter and assess his punishment at confinement in the penitentiary not less than two nor more than five years."

The correctness of this charge is vigorously assailed by appellant and on many grounds. Among other things it is asserted that it is error for the court to fail to charge the jury in connection with his charge upon manslaughter predicated upon such facts that the facts and circumstances must be viewed from the standpoint of the defendant, and that in view of all the testimony showing that deceased had only a short while prior to the homicide stated of and concerning appellant's daughter that he could prove that she was in a state of pregnancy for a period of two months prior to her marriage to de-

ceased, which statement had been communicated to the appellant, that it was error for the court to submit to the jury, in his charge upon manslaughter, as a question of fact to be found by them, as to whether or not such language constituted adequate cause. Further it is complained that this charge is erroneous in that the doctrine of reasonable doubt is not applied to the evidence raising the issue of manslaughter. It is also complained that the court erred in this charge in that it is a charge upon an issue not raised by the evidence and included an instruction on "a provocation given by some other person than the party killed." Again complaint is made that the charge of the court on the subject of manslaughter is argumentative, upon the weight of the testimony and holds out too prominently before the jury the opposite view upon the issue of manslaughter, in that in the fourth, fifth and thirteenth paragraphs of the charge quoted the court instructs and repeats to the jury that the cause must have created in the mind of the defendant sudden passion, such as anger, rage, sudden resentment or terror in order to reduce the offense to manslaughter, and by such repetition was calculated to induce the jury to believe that the court was of the opinion that no such passion existed. We think that many of these criticisms are correct. There was, as we conceive, no justification for the inclusion in the charge of the clause "on a provocation given by some other person than the party killed," and while this of itself, in view of the evidence, may possibly not have been hurtful, on another trial it should be omitted for the reason that there was no claim by appellant, or pretense in the evidence that the provocation for the killing was given by any other person than the party killed.

Among other things, the court instructs the jury as follows: "Now, if you find from the evidence beyond a reasonable doubt, that defendant did voluntarily shoot with a pistol and thereby kill Fred Brunsterman at the place and about the time charged in the indictment, but you further believe that at the time of the killing the defendant was under the immediate influence of sudden passion rendering his mind incapable of cool reflection and aroused by insulting words of or imputed to deceased towards or concerning defendant's daughter, Lula Johnson (then Lula Brunsterman), communicated to defendant by the witness Andrew Vinson to the effect that said Lula was in a state of pregnancy when deceased married her, and that same amounted to 'adequated cause,' and that the killing took place upon the first meeting of defendant with deceased after Vinson had informed defendant of such insult, you will not find defendant guilty of murder but will find him guilty of manslaughter and assess his punishment at confinement in the penitentiary not less than two nor more than five years." It is to be assumed, of course, that the word "adequated" is either a typographical error or a mere lapse of the pen, but we believe that the insertion of this clause, "and that the same amounted to adequate cause," was both erroneous and hurtful. It is expressly

provided that among others the following is deemed in law adequate cause: "Insulting words or conduct of the person killed towards a female relation of the party guilty of the homicide." And it is error in such case to leave the jury to determine whether such insulting words or conduct are adequate cause. Fuller v. State, 50 Texas Cr. Rep., 14; Stewart v. State, 52 Texas Crim. Rep., 273; 106 S. W. 685. In the case of Stewart v. State, it is said: "In regard to insulting conduct toward a female relative, the statute provides that it is adequate cause if the passion be engendered thereby, if the killing occurs on the happening of the insulting conduct or as soon as the parties may meet after the slayer has been informed of such insulting language or conduct." It will be noted that in a former paragraph of the charge, the court had instructed the jury as follows: "Insulting words or conduct of the person killed towards a female relation of the defendant would be adequate cause, such as above spoken of, provided the killing took place immediately upon the happening of the insulting words or conduct, or so soon thereafter as the party killing may meet with the party killed, after having been informed of such insulting words or conduct." However, as will be noted in the last clause of the charge quoted, where he comes to apply the law to the facts of the case and state the penalty for the offense, it is in terms left to the jury as to whether same is adequate cause. Again we think the charge of the court subject to criticism and just complaint in that it does not apply the doctrine of reasonable doubt to the issue of manslaughter. The court does not charge the jury that if they believe from the evidence beyond a reasonable doubt that the defendant is guilty of an unlawful killing, but have a reasonable doubt as to whether the offense is murder or manslaughter, that they will give defendant the benefit of such doubt and find him guilty of no higher grade of offense than manslaughter; but the jury are not in terms instructed that if they have a reasonable doubt as to the existence of the facts essential to constitute the offense of manslaughter, they would acquit him of such grade of homicide. As stated in the opinion of the first appeal, under the facts of this case, it was all important to the appellant that a clear and correct submission of the issue of manslaughter should have been given by the court in his charge. We do not think this has been done and we think that the charge is justly subject to the objections above noted and probably others.

For the errors noted the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, dissents.