## L. J. GREEN v. THE STATE.

No. 6341. Decided June 22, 1921.

Rehearing Denied October 12, 1921.

1.—Murder—Requested Charge—Sufficiency of the Evidence.

Where, upon appeal from a conviction of murder, it appeared from the record that defendant asked a peremptory instruction of "not guilty," upon

the ground that the evidence did not establish that the shot from the gun of appellant killed deceased, which requested charge was refused. There was no error, as it appeared from the record that defendant did the shooting.

### 2.—Same—Requested Charge—Self-Defense—Defendant's Purpose.

Where, upon appeal from a conviction of murder, it appeared from the record, irrespective of appellant's purpose, in going to the place where deceased lived, his own language and conduct, after he arrived there, would necessarily enter into the question of his right to take the life of deceased, and deprive him of the right of self-defense. And there was no error in refusing a requested charge inapplicable to the proposition embraced therein.

### 3.—Same—Self-Defense—Charge of Court—Right to Arm Himself.

Where, upon trial of murder, the court's charge gave defendant the perfect right of self-defense, and was in no ways limited by reason of his going to the home of deceased, armed with a shotgun, there was no necessity for charging the jury on the right of defendant to arm himself. Following Harrelson v. State, 60 Texas Crim. Rep., 539, and other cases.

### 4.—Same—Evidence—Threats Against the Deceased.

Where, upon trial of murder, the court admitted testimony of the fact that on the day before the homicide defendant had a conversation with his son at whose house the homicide occurred, and that the statement was made, "you come over Sunday and we will beat hell out of him," there was no error in admitting such testimony, as this statement was used in connection with other facts which rendered it admissible, as a threat against the deceased. Following Hardy v. State, 31 Texas Crim. Rep., 289, and other cases.

### 5.—Same—Newly Discovered Evidence—Rule Stated.

Ordinarily, new trials will be refused for newly discovered evidence admissible only for the purpose of impeachment, and where some of the witnesses attacked by the affidavit to the motion for new trial were defendant's own witnesses, there was no error in overruling the motion.

### 6.—Same—Sufficiency of the Evidence.

Where, upon trial of murder and a conviction of that offense, the latter was sustained by the evidence, there was no reversible error.

### 7.—Same—Rehearing—Threats Against the Deceased.

It is not necessary for deceased to be named in the threat of defendant in order to make the same admissible in evidence, and in passing on the question as to whether the threat in the instant case referred to or included the deceased, its language will be viewed in the light of the entire record, and there being no reversible error, the conviction is sustained. Distinguishing Strange v. State, 38 Texas Crim. Rep., 280, and other cases.

Appeal from the District Court of Upshur. Tried below before the Honorable J. R. Warren.

Appeal from a conviction of murder; penalty, eight years imprisonment in the penitentiary, with intermediate sentence.

The opinion states the case.

*M. B. Briggs,* and *T. H. Briggs,* for appellant.—On question of threats by the defendant against the deceased: Godwin v. State, 43 S. W. Rep., 336 Holley v. State, 46 id., 39; Fossett v. State, 55 id., 497; Strange v. State, 43 id., 551; and cases cited in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Upshur County of murder, and his punishment fixed at five years in the penitentiary.

Deceased was a nephew of appellant, and was making his home at the time of the homicide with appellant's son, Oscar Green, at whose house the shooting took place.

The homicide occurred Sunday morning about 8:30 or 9 o'clock. A recital of the facts would be of no value except as illuminating our action in ruling upon the grounds presented by appellant for a reversal of his case.

Appellant asked a peremptory instruction of not guilty upon the ground that the evidence did not establish that the shot from the gun of appellant killed deceased. This was refused, and we think properly so. It is true that no one described the wounds on the body of deceased with any particularity, nor did anyone state in terms that deceased came to his death by gunshot wounds inflicted by appellant, but the evidence established conclusively that death was the result of such gunshot wounds. Without going into the testimony of the various eyewitnesses, we quote from the testimony of Miss Lewis who said, referring to the incidents immediately connected with the shooting, that appellant "throwed up his gun, that deceased ran and got a gun, and both fired almost if not exactly together, that deceased walked into the dining room and fell in there, that he 'let into calling his niece, saying they had killed him,' that Oscar was shot in the right hip and George (deceased) in the lower bowels. . . . When the defendant shot him, George Green went into the dining room and fell, . . . that he let in to screaming, said they killed him, . . was standing out in the hall when Mr. Green shot him," etc. Many other things occur in the testimony of other witnesses similar to the above.

Appellant asked the following special charge: "Gentlemen of the jury at the request of the defendant I give you in charge as a part of the law of this case, the following instructions: That if the defendant on the occasion in question went down to the house of the deceased, George Green, for the purpose of having a friendly talk with him, or for the purpose of advising him to give up the six-shooter mentioned in the evidence and that when he arrived in front of the house, he inquired for deceased, George Green, and that about that time he saw George Green run from one room into the room where the gun was and saw the said deceased pick up the gun, and that the deceased was using said gun in a threatening manner that looked like he intended to shoot defendant or if it reasonably appeared to the defendant that the deceased was fixing to shoot the defendant and that the defendant then shot the deceased he would not be guilty and this you will view from the standpoint of the defendant as it appears to him at the time

under all facts and circumstances and evidence and if you shall find that he so acted you will find the defendant not guilty or if you have the reasonable doubt as to whether or not the defendant so acted you will give him the benefit of such doubt and find him not guilty."

This was properly refused. Irrespective of appellant's purpose in going to the place where deceased lived, his own language and conduct after he arrived there, would necessarily enter into the question of his right to take the life of deceased; and might easily be such as to entirely deprive him of any right of self-defense, and might show mutual combat, and may have shown that deceased was justified in getting a gun and acting as if he intended to shoot appellant. The State witness Lewis said that when appellant saw deceased he threw up his gun before deceased made any effort to get a gun. Such testimony would clearly make inapplicable the propositions embraced in said special charge.

The court's charge on threats in connection with self-defense, was full and fair, and it was not error to refuse the special charge asked on this subject. In this connection, we observe that appellant's perfect right of self-defense having been given him in the charge of the trial court, and same having been in no way limited by reason of his going to the home of deceased armed with a shotgun, there was no necessity for charging the jury on the right of appellant to arm himself. Harrelson v. State, 60 Texas Crim. Rep. 539; Holmes v. State, 155 S. W. Rep. 205; Strickland v. State, 161 S. W. Rep. 110.

Complaint is made of the admission of testimony of Reuben White of the fact that on the day before the homicide appellant had a conversation with his son, at whose house the homicide occurred, and the statement was made, "You come over Sunday and we will beat hell out of him." This was objected to because too general, not being shown to have reference to deceased, and as being inflammatory and prejudicial. The bill of exceptions presenting this matter was approved by the trial court with the qualifying statement that the connection in which the language was used renders it admissible as shown by the statement of facts. The bill with this qualification was accepted by appellant, and might have been held by us to have precluded the necessity for further investigation, but we have looked to the statement of facts and find that same shows that when appellant went to see deceased on the Sunday morning of the homicide he apparently wished to compel him to produce a pistol belonging to a negro named Shorty. It is also shown that at some time recently before the homicide deceased had used language concerning appellant which angered him very much. It further appears that on the Saturday afternoon preceding the killing on Sunday morning, appellant testified that deceased came to his blacksmith shop and "they would not let him come into the shop." The threat complained of was supposed to have been made at said shop and on Saturday afternoon before the killing next morning. The witness who testified to said threat,

said he heard appellant and his son talking about somebody,—they talked about a pistol,—about being mad at somebody,—and that the son said to appellant for him to come over to his house next day and they would beat hell out of him. The evidence further shows that no other man lived at said house where the killing occurred except Oscar Green and deceased. Appellant did go over the next morning, having borrowed a gun before going, and if the testimony be true, having threatened to go there to harm deceased. These facts do not bring the instant case within the rule that general threats, not shown to have been directed at the injured party, nor to include him, are not admissible; but rather bring it within the line of authorities holding threats admissible, even though no name be called, if it can be reasonably gathered that the injured party was meant or included in such threat. Hardy v. State, 31 Texas Crim. Rep. 289; Williams v. State, 40 Texas Crim. Rep. 501; Sebastian v. State, 41 Texas Crim. Rep. 251; Taylor v. State, 44 Texas Crim. Rep. 549.

Appellant asked a new trial because of newly discovered evidence, attaching affidavits of certain parties as to statements made by witnesses in the case, in seeming contradiction to their testimony upon the trial. Ordinarily new trials will be refused for newly discovered evidence admissible only for purposes of impeachment. Some of the witnesses attacked by said affidavits were defendant's own witnesses.

This disposes of all the contentions made by appellant upon the trial. All of the eyewitnesses to the homicide testified, two on behalf of the State, and three, including appellant, for the defense. It was in testimony by a witness having apparently no interest in the outcome of the trial, that on the morning of the homicide appellant came to his house and borrowed a shotgun and got a couple of shells loaded with No. 4 shot, telling witness that he wanted same for the purpose of killing a hawk. This witness lived about a mile from the home of appellant's son where the shooting occurred, and stated that about thirty minutes after appellant got the gun he heard the shooting. He also testified that a few days after the shooting he was passing the home of appellant and the latter called him in and asked him if he was mad with him because he got the gun and told witness that he got the gun to shoot the boy with, and that he knew if he told the truth as to why he wanted to get it, witness would not let him have it. Another witness testified that before the homicide appellant came by his house and told him that he was going to kill deceased that morning. We believe the facts justified the jury in arriving at the verdict rendered. The evidence was conflicting, appellant testifying that after going to his son's house and inquiring for deceased and being told he was not there, that he made some statement about purposing to go to Gilmer and report deceased for some stealing, and that he got on his horse and was about to start away and turned to speak to his son, and that he knew nothing that occurred until a number of days after when he recovered consciousness at his home. The evidence

showed that two shots were fired almost simultaneously, one of them taking effect in the body of deceased and the other in the body of appellant. All these conflicts of evidence were before the jury and have been resolved against the accused.

Finding no error in the record the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

October 12, 1921.

LATTIMORE, JUDGE.—In dictating the original opinion we stated the length of appellant's sentence to be five years. The conviction was for eight years with indeterminate sentence of from five to eight, and the clerk of this court noted the term on the outside of the record as being five years which caused our erroneous statement, which is here changed and the sentence is referred to as being eight years, our attention having been called to this error in the motion for rehearing.

Appellant again insists that it was error to allow Reuben White's testimony which is referred to and discussed at some length in our original opinion. The authorities cited by appellant, upon careful examination, will be found differing in facts and their consequent principles, from the instant case. In the Strange case, 42 S. W. Rep. 551, this court says:

"And, in regard to the threat made by defendant against his brother Lewis, it is absolutely unconnected with any fact or circumstance shedding any light upon the case; and in that connection the fact that he 'laughed, and said he would kill somebody before Saturday night,' could have no significance as tending to make a solution of any act of defendant that was relevant and provable in the case. There is no pretense that he referred to the deceased, but they were then on friendly terms."

In the Godwin case, 43 S. W. Rep. 336, the opinion states: "We hold the rule to be that evidence of general threats made by the defendant on trial for murder, when such threats are not shown to be directed toward the person slain, or to embrace such person, are inadmissible." Referring to the threats made in that case, the court says that the evidence does not even remotely suggest that they were directed at the deceased.

In Holley's case, 46 S. W. Rep. 39, this court did not hold the threats inadmissible, but on the contrary used the following language, which is in support of the rule announced in the instant case:

"It occurs to us, however, from the other testimony in this case, that, notwithstanding deceased was not named in connection with the threats, it can be reasonably inferred that the threats were directed against him. Appellant was shown to have had malice against him,

and he is not shown to have entertained hostile feelings towards any other person in the community."

In Fossett's case, 55 S. W. Rep. 497, it was shown that appellant said he wished he had a saloon so he could shoot a bartender. This court said:

"While it is always important to show the state of mind of defendant before the killing, as indicating malice, yet this state of mind must in some manner be directed towards deceased, either by direct expression or the remark must, within its scope, embrace deceased. Neither of these conditions are shown here. It was not directed towards him by name, nor did it embrace him by intendment, inasmuch as deceased was not a bartender."

Discussing the statement of the accused, that when he went after anyone he generally got them, in the Lucas case, 95 S. W. Rep. 1055, it is stated: "It is clear from the bill of exceptions and the witness' testimony, that the remark was made before, and had no reference to deceased, for appellant and deceased up to this time had been friends."

In Barbee's case, 97 S. W. Rep. 1059, where appellant was charged with the murder of Jenkins, it was held improper to prove that he said, "I am loaded for John Davis or anyone else." Without discussion of the principle, Godwin's case, *supra*, is referred to as authority for this conclusion. In Fuller's case, 113 S. W. Rep. 541, discussing the admissibility of the statement of the accused that he was going to kill a Dutchman or run him out of the country, this court said:

"We think probably this testimony was not admissible. It has occurred to us that the decisions of this court, at least in the language of some of them, have carried the rule rather further than as an original proposition the writer should have been inclined to go, but where, as in this case, there is no reference to the deceased, no suggestion in the testimony that his troubles with appellant were the subject of conversation and nothing in the language of the parties to constitute even a remote reference to or connection with the deceased, it would seem under the authorities, and in reason, that such a statement ought not to be received. We can well understand how the evident idea of the court below that it was a question for the jury might apply if there was enough in the testimony to leave it open to a fair inference that the threats introduced had reference to the deceased."

Reference to our statement in the original opinion makes it clear that in the conversation testified to by White, the deceased was probably under discussion by appellant and his son and was presumably the party referred to in the testimony objected to. It is not necessary for deceased to be named in the threat in order to make same admissible, and in passing on the question as to whether the threat so made

referred to or included the deceased, its language will be viewed in the light of the entire record.

The motion for rehearing will be overruled.

*Overruled.*