EMIL W. FEY V. THE STATE.

No. 21667.   Delivered June 25, 1941.

The opinion states the case.

*Dave Watson, Schweppe & Schweppe,* and *Spears, Taylor & Spears,* all of San Antonio, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for a period of eight years.

The record shows that on the 28th day of June, 1939, appellant killed Raymond Edwards at the home of Annie Fromme by shooting him with a rifle. It appears from the evidence that Mrs. Fromme was a widow and lived at Van Raub in Bexar County. Her first husband was a brother of the appellant, and after his death she married Henry Fromme who, was killed in an automobile accident a short time after their marriage. Being alone, she invited the appellant, who was a bachelor, to move to her place and assist her in taking care of her property, which he did. When he first moved to her place he slept in her home but when he, according to her testimony, indulged in the excessive use of intoxicating liquor, she made him move into the club house a short distance from her residence. About a week prior to the homicide, a Mr. Tucker came to the home of Mrs.

Fromme, bringing with him the deceased, Raymond Edwards, and the two put a new roof on her residence. During this time and for some days prior thereto the appellant was engaged in drilling a well at Medina. On Saturday afternoon, June 24th, Mrs. Fromme, Edwards and Tucker went to the town of Boerne for the purpose of purchasing roofing nails and some groceries. Before they left, she wrote the following note to appellant and left it where he would find it in case he came home during her absence:

"In case you are home before I do we have gone to Boerne, will be back soon. Both wait. I want to tell Henry something."

Upon their return, they found the appellant and Henry Schwab at her home. An argument soon arose between Tucker and appellant about bringing Edwards out there, during the course of which appellant called Tucker a "s-- of a b---." Tucker started to attack him but Mrs. Fromme intervened, telling Tucker to sit down and instructed appellant to get out and stay out. Appellant seems to have complied with her request but Tucker wanted to follow him and she again remonstrated with Tucker. On the following Wednesday (June 28th) appellant came back to the premises of Mrs. Fromme, accompanied by Mr. Schwab, to get his cow and other personal property which he had in the club house. He asked her for the keys to the club house. She told him that he had gotten them on the preceding Saturday. Appellant replied that she was a liar and demanded the keys. In the course of the argument appellant remarked: "I see that skunk sitting there," (meaning Edwards). He then went to the club house, but came back in a short time with a .30-30 rifle and remarked, "There is the s-- of a b--- I am going to get." When this remark was made Edwards ran to the screen door leading into Mrs. Fromme's home, at which time appellant fired and Edwards fell.

Appellant testified in his own behalf. He stated that Mrs. Fromme had a .30-30 rifle, a .22 rifle, a 12-guage shotgun and a .410 shotgun in the house; that when he came to the yard gate to ask her for the keys to the club house in order that he might get his belongings she met him and said, "You get out of here. You ain't going to get nothing. You can't move anything"; that Edwards, who was sitting on a chair on the lawn, jumped up and said, "I will get him out," and started to the screen door to enter the house when he (appellant) shot him, believing that Edwards was going into the house to get a gun to kill him (appellant).

Appellant filed a plea for a suspension of sentence in the event of his conviction and proved a good reputation as a law-abiding citizen.

Bills of Exception Nos. 1 and 2 relate to the same subject matter and will be considered and treated together. By Bill of Exception No. 1, appellant complains of the action of the trial court in admitting in evidence the testimony of Alma Buch to the effect that a couple or three days before the 28th day of June, 1939, she saw appellant in a cafe in the city of San Antonio where she was a waitress; that while in said cafe appellant dropped a shell and after picking it up, said that "he was going to kill some s-- of a b--- with that." Bill of Exception No. 2 shows that after said testimony was admitted over appellant's objection, he made a motion to strike it out and withdraw it from the jury, which the court declined to do, whereupon appellant again excepted to the court's ruling. The court qualified this bill, as it had done Bill No. 1, and attached thereto the questions propounded to the witness as well as her answers thereto and the objections addressed by counsel to the testimony, which clearly shows when and to what part of the testimony appellant addressed his objections. While it is always permissible for the State to prove antecedent threats made by the defendant against the deceased, nevertheless, the threats must have been directed towards the deceased or embrace him in a class in which he is included in order to show the state of mind of the defendant before the killing as indicating malice. This state of mind must in some manner be directed towards the deceased either by direct expressions or the remark must within its scope embrace the deceased. Neither of these conditions is shown to have existed in the present case. The threat was not directed toward the deceased by name, nor is there any pretense that he referred to him. Neither is there any circumstance proven from which a conclusion could reasonably be drawn that the threat had reference to the deceased.

In the case of Fossett v. State, 41 Tex. Cr. R. 400, 55 S. W. 497, it was proved on the trial that a few minutes prior to the homicide appellant remarked to the witness, F. A. Miller, that he would like to have a saloon out in the country so he could kill a bartender every week or so; that "he wanted to shoot him in the belly." It was not shown that the deceased was present at the time and that the conversation was con-

cerning him. The deceased was not a bartender and this court, in disposing of the question, said:

"While it is always important to show the state of mind of defendant before the killing, as indicating malice, yet this state of mind must in some manner be directed towards deceased, either by direct expression, or the remark must, within its scope, embrace deceased. Neither of these conditions are shown here. It was not directed towards him by name, nor did it embrace him by intendment, inasmuch as deceased was not a bartender."

In the case of Goodwin v. State, 38 Tex. Cr. R. 466, it was shown by the witness, Hayden Williams, that he saw defendant in the town of Baird, in Callahan County, about 11 o'clock the night before the killing; that defendant took him to a rock pile in front of Maxwell's saloon, where he had his clothes hid, which were in a seamless sack; that appellant got on his horse and asked the witness to hand him his sack of clothes, which he did, and appellant tied them behind his saddle and went to Seay's saloon; that while there, he said he was going to leave the country, but was "going to kill some d-- s-- of a b----- before he left." He said he was going to kill as good a friend as he had. He had his six-shooter in his hand at the time. Ida Daniels testified that she saw Goodwin about 11 o'clock on the night before the killing, and that she heard him say that "he was going to kill somebody." The State also proved by Scruggs that he saw Goodwin early in the night before the killing and heard him say that "he wanted to kill some s-- of a b---; that he felt like killing somebody." The defendant reserved his bill of exception to all of this testimony on the ground that the threats were not pertinent or relevant; that they were not shown to have in any manner referred to the deceased. In disposing of the case this court held the testimony inadmissible and reversed the judgment of conviction.

In the case of Fuller v. State, 113 S. W. 540, 54 Tex. Cr. R. 454, it was shown by the State that about two weeks before the homicide the accused declared that "he was going to kill a Dutchman or run him out of the country," where there was no reference to the decedent nor to the trouble between them. The court in that case held the testimony inadmissible. See Helvenston v. State, 53 Tex. Cr. R. 636; Bradley v. State 54, Tex. Cr. R. 53; Green v. State, 253 S. W. 962. Many other cases might be cited in support of appellant's contention. It is our opinion that the learned trial court fell into error in ad-

mitting the testimony complained of in the bills of exception above mentioned. That it was prejudicial to the rights of the appellant is quite evident from the record.

Quite a number of bills of exception were taken by appellant complaining of certain remarks indulged in by the District Attorney in his closing argument to the jury but inasmuch as the same may not arise upon another trial we do not deem it necessary to discuss them here.

Complaint is also made of the conduct of the District Attorney in cross-examining the witness Schwab. It appears from the bill that the District Attorney asked him if he did not, within four hours after the killing, make a written statement to the investigator for the District Attorney but the bill fails to show what answer, if any, the witness made thereto. The District Attorney then specifically directed the attention of the witness to certain facts which he had testified to on direct examination and asked him if it was not a fact that he made no mention thereof in his statement to the investigator nor in his testimony before the grand jury. What answer, if any, the witness made does not appear in the bill. Then the District Attorney handed him a statement and requested him to read from it but the bill fails to reflect what he read if, in fact, he did read any part thereof. Thereupon appellant's counsel requested that he be granted the privilege of inspecting the document. This the District Attorney refused to do and the court declined to require him to do so. However, the court instructed the jury that if there was anything quoted from the document, they should disregard it as the instrument was not offered in evidence. Since the bill fails to disclose what was said or read by the witness in reply to the questions propounded to him by the District Attorney, we are unable to perceive any error. However, it might be profitable to the District Attorney to observe the rule announced by this court in the cases of Green v. State, 53 Tex. Cr. R. 490, and Board v. State, 56 S. W. (2d) 464, and be governed thereby so as to avoid any question that might arise out of the procedure here indicated.

For the error herein pointed out, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commisison of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.