## W. M. ANDRUS v. THE STATE.

No. 2740.   Decided March 25, 1914.

**1.—Murder—Self-defense—Apparent Danger—Charge of Court.**

Where, upon trial of murder, the evidence raised the issue of purely apparent danger with reference to self-defense, it was reversible error to submit the issue of self-defense on that of actual attack instead of apparent danger.

**2.—Same—Threats—Self-defense—Charge of Court—Defendant's Standpoint.**

Where, upon trial of murder, the evidence raised the issue of threats, it was reversible error in the court's charge to instruct the jury that if they found from the evidence that such threats were made in fact, etc., as the question was as to whether defendant believed them to have been made from his standpoint, and not from that of the jury, especially where a correct charge was requested.

**3.—Same—Instrument Used—Charge of Court.**

Where, upon trial of murder, the evidence made a case of apparent danger and that defendant thought the deceased was going to draw a pistol when he shot him, it was error to instruct the jury that if the instrument was not likely to produce death, it could not be presumed that death was designed, etc., as such a charge had no application to the facts, either as to deceased or defendant.

**4.—Same—Evidence—Carrying Pistol—Acts of Deceased.**

Upon trial of murder, there was no error not to permit in evidence testimony of specific instances of the deceased carrying and using a pistol, as bearing on defendant's belief that deceased had a pistol at the time of the homicide and was about to execute threats previously made.  Davidson, Judge, dissenting.

**5.—Same—Repeal—Statutes Construed—Prior Law—Punishment.**

The Act of the Thirty-third Legislature changing the definition of murder does not repeal the prior law of murder to the extent that there could be no punishment under an indictment charging murder under the prior law.  Following Cook v. State, 71 Texas Crim. Rep., 532, and other cases.

Appeal from the Criminal District Court of Harris.  Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Kahn, Williams & King* and *D. R. Pearson* and *T. B. Pearson* and *W. L. Hill* and *Lane, Wolters & Storey,* for appellant.—On the question that the new law on murder repeals and supersedes the prior law and abolishes murder in the second degree:  Ex parte Vaccarezza, 52 Texas Crim. Rep., 105, 106 S. W. Rep., 392; Garrison v. Richards, 107 S. W. Rep., 861; Voigt v. Gulf Ry. Co., 94 Texas, 357; Rodgers v. Watrus, 8 id., 62; Ex parte Valasquez, 26 id., 178; Cain v. State, 20 id., 355; Stirman v. State, 21 id., 734; Ex parte Coombs, 38 Texas Crim. Rep., 648; Dickinson v. State, 38 id., 472; Stebbins v. State, 22 Texas Crim. App., 32; Harold v. State, 16 id., 157; Holden v. State, 1 id., 225; Hall v. State, 52 Texas Crim. Rep., 195, 106 S. W. Rep., 149.

On question of absence of saving clause in the new law on murder as to offenses committed prior to its going into effect: Treasurer v. Wygall, 46 Texas, 447; Worsham v. Richards, 46 id., 441; Dawson v. State, 33 id., 492; Hall v. State, 52 Texas Crim. Rep., 195; Kenyon v. State, 31 Texas Crim. Rep., 13; Ex parte Vaccarezza, 52 Texas Crim. Rep., 105, 106 S. W. Rep., 392; Tuton v. State, 4 Texas Crim. App., 472; Halfin v. State, 5 id., 212; Lawhon v. State, 26 id., 101; Cox v. State, 28 id., 537; Sheppard v. State, 1 id., 522; Hubbard v. State, 2 id., 506; Chaplin v. State, 7 id., 87; Dickinson v. State, 38 Texas Crim. Rep., 472.

On question of court's charge on actual attack: Sanchez v. State, 67 Texas Crim. Rep., 453, 149 S. W. Rep., 124; Lyons v. State, 71 Texas Crim. Rep., 189, 159 S. W. Rep., 1070; Holmes v. State, 68 Texas Crim. Rep., 17, 155 S. W. Rep., 205; Parish v. State, 69 Texas Crim. Rep., 254, 153 S. W. Rep., 327; Phipps v. State, 34 Texas Crim. Rep., 560; Harrison v. State, 48 id., 44; Watson v. State, 50 id., 171; Duke v. State, 61 id., 19; Johnson v. State, 63 id., 50; Puryear v. State, 50 id., 454.

On question of charge of court on threats: Bussey v. State, 71 Texas Crim. Rep., 312, 153 S. W. Rep., 873; Brookins v. State, 71 Texas Crim. Rep., 101, 158 S. W. Rep., 521; Smith v. State, 70 Texas Crim. Rep., 62, 156 S. W. Rep., 214; Mayhew v. State, 65 Texas Crim. Rep., 290, 144 S. W. Rep., 229; Kelly v. State, 67 Texas Crim. Rep., 72, 151 S. W. Rep., 304; Robbins v. State, 70 Texas Crim. Rep., 52, 155 S. W. Rep., 936; Huddleston v. State, 54 Texas Crim. Rep., 93; Lundy v. State, 59 id., 131; Hightower v. State, 56 id., 248.

On question of rejecting evidence that deceased carried a pistol: Glenewinkel v. State, 61 S. W. Rep., 123; Branch v. State, 15 Texas Crim. App., 96; Lilly v. State, 20 id., 1.

On question of court's charge on instrument used: Borden v. State, 42 Texas Crim. Rep., 648; Burnett v. State, 46 id., 116; Gallagher v. State, 55 id., 50; Spivey v. State, 45 id., 496.

*C. E. Lane,* Assistant Attorney General, and *Richard G. Maurey,* District Attorney, and *Clarence Kendall* and *L. M. Williams* and *J. C. Florea* and *Mathis, Teague & Embry,* for the State.—On question of court's charge on threats: Corneilus v. State, 54 Texas Crim. Rep., 173; Williford v. State, 38 id., 393; Duncan v. State, 30 Texas Crim. App., 1; Shannon v. State, 35 Texas Crim. Rep., 2.

On question of court's charge on actual attack: Rogan v. State, 46 Texas Crim. Rep., 573; Payton v. State, 60 Texas Crim. Rep., 475, 132 S. W. Rep., 127; Thompson v. State, 35 Texas Crim. Rep., 352; Casey v. State, 54 id., 584, and cases supra.

On question of instrument used and deadly weapon: Campos v. State, 50 Texas Crim. Rep., 102; Manning v. State, 51 id., 211.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at ten years confinement in the penitentiary.

There were two theories on which the case was submitted to the jury. The State's theory was that deceased was killed without cause. Appellant came from his office to the garage underneath his office to which deceased had just returned with his car and was leaving the car in the garage as was his custom, and while deceased was walking out of the building and in the act of opening some letters defendant came to the door with his pistol in his hand and immediately began shooting the deceased while he was making no attempt to attack the defendant and while he was making no hostile demonstration of any sort, and that the motive for the killing was ill-will growing out of a land transaction between the two commonly referred to as the "Polly land matter," and deceased was unarmed at the time. The defendant's theory was that the meeting was a casual one; that he had left his office and started to a store for the purpose of seeing a gentleman by the name of Robertson, and that in going from this office to the store he passed immediately in front of the garage where the killing occurred. That previously he and deceased had had some misunderstanding with reference to the "Polly land matter," and deceased threatened on more than one occasion to do him serious bodily harm and to kill him, and that appellant had armed himself for his own protection in the event deceased should attempt to carry his threats into execution. That as he passed the door of the garage he noticed deceased walking towards the door, and he stopped for the purpose of asking the deceased, and did ask him, for a settlement of the "Polly land matter." That deceased replied that he "was too damned big a coward to settle anything with him," and made a quick step forward, throwing his right hand to his pocket as if to draw a pistol, the bulk and outline of which he saw in deceased's pocket, and fearing deceased was about to kill him or do him serious bodily harm, he drew his pistol and fired and continued firing until deceased fell. There had been ill-feeling between the parties with reference to what is known as the "Polly land matter" for some time, and a disagreement had arisen between them with reference to that transaction. Appellant's theory was that deceased Van Slyke had threatened to kill him on account of those matters, and this had been communicated to him, and when he left his office almost immediately before the homicide he passed by the door of the garage where deceased was and saw him approach the door, and he mentioned this Polly land matter to him, when the subsequent matters above detailed occurred.

On the plea of self-defense the court charged the jury: "If from the evidence you believe the defendant killed the said A. H. Van Slyke but further believe that at the time of so doing the deceased had made or was making an attack on him which, from the manner and character of it, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you will acquit him; and if the deceased was armed at the time he was killed and was making such attack, on defendant, and if the weapon used by him and the manner

of its use were such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant." Various exceptions were urged to this charge. No witness swore to any actual danger, or that deceased was making any attack on appellant. The testimony for the defense in this connection shows that when appellant spoke to deceased he moved forward and threw his hands to his pocket where appellant says he saw what he thought the bulk of a pistol, or shape of it in Van Slyke's pocket and he shot. Van Slyke did not draw a pistol, nor did he use a pistol, nor did he display a pistol. So the case is one purely of apparent danger. The court submitted it upon the theory that deceased was making an attack upon appellant, or was about to do so, ignoring the testimony which made only an apparent attack, or a preparation rather to draw a pistol. Under all the authorities this charge is wrong. Wherever the danger is apparent and not actual or real, the court in his charge must conform the charge to the facts. There is quite a difference under our statutes between real and apparent danger. The apparent danger theory must not be burdened with actual or real danger. Appellant is entitled to have the jury pass upon the case as it is made and not upon an issue that is not shown by the facts. Self-defense under the theory of apparent danger may be brought about by the act of the party coupled with his words, or by the act without the words. Here in this case in addition to what has been above said, the deceased moving forward used the language as set out in the evidence of the defendant. The failure of the court to charge the law of the case under this theory will require a reversal of the judgment. It is also urged that the charge on manslaughter is subject to the same criticism. This will also be avoided upon another trial.

With reference to the law of threats, the court gave the following charge: "If you find from the evidence that deceased did threaten to take the life of defendant or to do him serious bodily injury, and at the time of the homicide deceased, by some act then done, viewing it from the standpoint of the defendant, manifested an intention to execute the threat or threats so made, if any, you will acquit the defendant, and say by your verdict not guilty.; or if you believe, in your minds, a reasonable doubt as to the existence of said facts, you will acquit him." Various exceptions were urged to this charge. The issue of threats was in the case made by defendant's testimony and contradicted by the State. It was an issue as to whether threats were made in fact, but threats were communicated to the defendant, and whether they were made or not, he was entitled to a charge on his view of the evidence. The jury might have believed they were not made, but if the defendant so believed and so acted, he was entitled to the law on the issue of threats viewed from his standpoint and not from the view point of the jury. We deem it unnecessary to cite authorities upon this question. The line of cases seem to be unbroken in Texas. The court should have affirmatively charged the jury that if defendant had been informed of the fact that his life

had been threatened or his body with serious injury, etc., he was entitled to a charge as he viewed the matter. To meet this appellant asked a special charge which was refused, but had it been given it instructed the jury that if defendant had been informed of threats, and at the time of the shooting deceased did any act or said any words coupled with such acts, which made it reasonably appear to defendant that he intended to execute the threats, then defendant would have the right to shoot, and in determining this question and whether or not there were such facts, they should view the transaction from the defendant's standpoint. This charge is correct and should have been given, and the court's charge should not have been given as embodied in the transcript.

The court charged the jury that "The instrument or means by which a homicide is committed are to be taken into consideration in judging the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." This charge ought not to have been given so far as defendant was concerned. It was a charge on the weight of the evidence, because the weapon he used was a deadly weapon and resulted in the killing of a man by shooting him. It should not have been given against appellant, because there was no weapon presented by the deceased. It was a case of apparent danger, and appellant thought the deceased was going to draw a pistol from his pocket to shoot with. Under the facts of this case we are of opinion this charge should not have been given. As given it was a charge on legal presumptions against the defendant.

Appellant offered to prove by several witnesses specific instances of the deceased carrying and using a pistol. It was shown by numerous bills of exceptions. The court excluded the testimony, evidently upon the theory it was not proving the custom or general reputation of the deceased in regard to carrying his pistol. Appellant testified that he had seen deceased with a pistol on several occasions for several months preceding the homicide, and particularly on the Saturday before the homicide and at the time and place of the homicide he believed he had a pistol in his pocket. We are of the opinion that appellant could prove the fact that the deceased had on various and divers occasions been seen carrying a pistol. He proposed by several witnesses to prove that he did carry it, and was in the habit of carrying it, and that when he was riding along the public road he would take it out and shoot at objects. While it was not specifically undertaken to show his general reputation in this regard or matters of general notoriety, yet a number of witnesses would have testified to the fact that he was in the habit of carrying and firing his pistol, and appellant himself having testified that he usually carried it, this character of testimony ought to have been admitted. It would have had weight in favor of appellant and should have been considered by the jury in passing upon the immediate facts attending the homicide as to the reasonableness of appellant's belief that deceased had a pistol in his pocket, and it would have fortified his testimony to the effect that

he believed his life was in danger, and that deceased was then about to execute previously made threats. In regard to the above proposition, my brethren believe the evidence not admissible unless knowledge was brought home to appellant by his own or other evidence.

There is another question ably and strongly argued by appellant's counsel, that is the Act of the Thirty-third Legislature changing the definition of murder repealed the prior law of murder to such an extent that there could be no punishment under indictments charging murder under the prior law. This matter was discussed by Judge Harper in two cases—Cook v. State, and Shaw v. State—decided at the present term. The conclusion reached in those opinions was that it was only a change of penalty and not such a repeal of the law as avoided punishment under prior acts of homicide. In view of those opinions we deem it unnecessary to here review the question, although the argument and reasoning carries great force and cogency.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*