## J. H. G. BECKER v. THE STATE.

### No. 4117.  Decided October 11, 1916.

**1.—Murder—General Reputation—Admissions by State.**

Where, upon trial of murder, the defendant had made his proof by one witness that defendant had always borne the reputation of being a peaceable, law-abiding citizen, and offered to prove this by other witnesses, when counsel for the State admitted in open court that defendant's reputation up to the time of the homicide was that of a peaceable, law-abiding citizen, and the court in his charge instructed the jury that they must accept this admission as true, there was no reversible error. Following Beard v. State, 44 Texas Crim. Rep., 402, and other cases.

**2.—Same—Truth and Veracity—General Reputation.**

Where, upon trial of murder, defendant as a witness on cross-examination denied that he had made a material declaration with reference to the deceased,

and the State, thereupon, introduced testimony that he did make such declarations, when defendant offered to prove that his general reputation for truth and veracity was good, and the court thereupon withdrew the said testimony of the State and refused to permit defendant to make such proof, and instructed the jury not to consider the State's testimony on this point for any purpose. Held, that the harmful and hurtful effect of said State's testimony was not removed by its withdrawal. Prendergast, Presiding Judge, dissenting.

### 3.—Same—Evidence—Deceased Going Armed.

Where, upon trial of murder, the court limited proof that deceased was in the habit of carrying a pistol to only two months prior to the homicide, the unfriendly relation extending much further back, during which time the deceased made serious threats against the defendant, the same was reversible error; although deceased was not armed at the time of the killing. Prendergast, Presiding Judge, dissenting.

### 4.—Same—Prior Assault—Third Party.

Upon trial of murder, there was no error in excluding testimony as to a prior assault by deceased upon defendant's son of which defendant was not aware prior to the homicide.

### 5.—Same—Self-serving Declaration.

Upon trial of murder, there was no error in excluding the self-serving declaration of the defendant made some two hours prior to the difficulty. Davidson, Judge, dissenting.

### 6.—Same—Evidence—Acts of Deceased.

Upon trial of murder, where the evidence showed that the difficulty grew out of the relation between deceased and defendant's daughter, the court should have permitted the defendant to prove that at the time the deceased was arrested with a pistol on him, he was near the Baptist Sanitarium, where defendant's daughter then stayed. Prendergast, Presiding Judge, dissenting.

### 7.—Same—Evidence—Conduct of Deceased.

Where, upon trial of murder, it appeared from the evidence that the unfriendly relations between defendant and deceased arose over deceased's conduct in visiting the daughter of the defendant so often, the defendant should have been permitted to show how this estrangement occurred, which culminated in the death of the deceased. Prendergast, Presiding Judge, dissenting.

### 8.—Same—Evidence—General Reputation.

Where certain witnesses for the defense stated in their preliminary examination their personal opinion of deceased, they were not qualified to testify to his general reputation, and there was no error.

### 9.—Same—Charge of Court—Reasonable Doubt.

Upon another trial, the lower court should apply the doctrine of reasonable doubt to his charge on self-defense, although the present charge of the court would not authorize a reversal.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Meek & Kahn,* for appellant.—On question of motive and state of mind of the parties: Poole v. State, 45 Texas Crim. Rep., 348; Koller

v. State, 36 id., 496; Simmons v. State, 31 id., 227; Lewallen v. State, 33 id., 412.

On question of general reputation of deceased going armed: Roach v. State, 46 Texas, 261; Brownlee v. State, 23 Texas Crim. App., 255.

Upon question of deceased showing hostile conduct towards defendant's friends or relatives: Wheeler v. Com., 87 S. W. Rep., 1106.

*C. C. McDonald,* Assistant Attorney General, *John H. Crooker, T. J. Harris, E. T. Branch, Elbert Roberts,* and *Frank Williford, Jr.,* for the State.—On question of admitting general good reputation of defendant as a peaceable, law-abiding citizen: Graham v. State, 29 Texas Crim. App., 31; Caruth v. State, 77 Texas Crim. Rep., 150, 177 S. W. Rep., 973, and cases cited in opinion.

On all other questions, see cases cited in dissenting opinion.

HARPER, Judge.—Appellant was convicted of murder and his punishment assessed at five years confinement in the State penitentiary.

In the first bill of exceptions appellant complains of the action of the court in refusing to permit him to prove by Mayor Ben Campbell and some ten of the other leading citizens of Harris County that they had known him for many years and that he had always borne the reputation of being a peaceable, law-abiding citizen. When the appellant made this proof by one witness counsel for the State admitted in open court that appellant's reputation up to the time of this unfortunate occurrence was that of a peaceable, law-abiding citizen, and the court in his charge instructed the jury: "The defendant has offered to introduce testimony to prove his general character as being a peaceable and law-abiding citizen, and the State has admitted that the general reputation of the defendant as being a peaceable, law-abiding citizen is good, and you are therefore instructed that you will accept as true and as a proven fact that the general reputation of defendant in that regard is good." Under such circumstances there was no error in this ruling of the court. Beard v. State, 44 Texas Crim. Rep., 402; Carver v. State, 67 Texas Crim. Rep., 116, 148 S. W. Rep., 746.

We are inclined to think that the bill, wherein it is shown that the defendant offered to prove by a number of witnesses that his reputation for truth and veracity was good, presents error. Appellant had testified that he had known deceased for a number of years, and they had been friends until the first of the year preceding the homicide in December. Appellant lived at Hockley, and had charge of the telephone at that place. The office was in a room of the house where he resided. Appellant's daughter attended to the telephone and deceased often visited at the telephone office; would close the door and remain in the office for some time. His wife and others called his attention to the matter and said it was calculated to cause people to talk about their daughter. He went to deceased about this conduct, and this appears to be the first break in their friendly relations.

Other matters occurred, when deceased one day about the middle of February approached appellant with an ax handle in one hand and a pistol in the other and gave appellant a very severe whipping, inflicting such injuries that he had to be carried to a sanitarium, where he remained for about two weeks, and was then carried to the Larendon apartments, where he was confined by the injuries about a month longer. Appellant testified to many threats communicated to him at various times from that date until the day of the homicide; that just two days before the homicide deceased had come from Houston to Hockley, and while there drew a pistol on him and cursed him and that he ran. He testified to facts and circumstances that, if believed, would lead one to believe that he thought he was in constant danger from deceased from the time that deceased gave him the whipping until the date of the shooting. To offset this, the State, on cross-examination, asked him if while he was at the infirmary Charley Almond had not visited him and talked with him. He stated that Almond had visited him. He was then asked if during the conversation then held Almond had not told him, appellant, that he had talked with Hamilton (deceased) about this trouble, and he, Hamilton, was desirous of letting the matter drop and did not want any further trouble with appellant. Appellant replied that no such conversation occurred, and no such statement was made to him. Appellant was further asked if he did not say he did not want to make up with Hamilton, and he answered, "No." The State then offered Almond as a witness and had him testify that he did tell appellant that he had a conversation with defendant, and told him that deceased did not want any further trouble and desired to let the matter alone and have it settled for all time, and that appellant had said he would not let it drop and would see if something more could not be done to Hamilton. After this testimony had been introduced by the State the appellant then offered to prove that his reputation for truth and veracity was good by Otto Sens and some twenty-five other residents of Harris County. When this testimony was offered by appellant the court withdrew the testimony of Almond from the jury and refused to permit appellant to prove his reputation for truth and veracity, and after withdrawing Almond's testimony the court instructed the jury not to consider it for any purpose. It will be noticed that the testimony of Almond went to a vital part of his defense as made—that Hamilton had been constantly pursuing him, going armed all the time, threatening his life, which threats had been communicated to him, and followed by an attempt to execute them just two days before the homicide, when he, appellant, fled. Could, and was the harmful and hurtful effect of this testimony removed by its withdrawal? We do not think so. It had been deliberately introduced for the purpose of impeaching appellant, and breaking down his defense. It was on one of the vital issues in the case. It is a general rule when it is thus sought to impeach

and break down the testimony of the State or appellant, proof of general reputation for truth and veracity becomes admissible.

In several bills it is shown that appellant desired to prove that deceased when visiting Hockley from the date of the difficulty in February until the date of the homicide had a pistol on his person. The court permitted him to prove those instances where the parties came and told appellant about seeing deceased armed, but refused to permit the witnesses to testify to seeing deceased armed at other times from February to September, limiting such proof to only two months prior to the homicide. Why the court limited such proof to only two months prior to the homicide, when the evidence both for the State and defendant shows that the unfriendly relations began in February, and continued until the date of the homicide, we can not understand. We think the testimony, taking into consideration the threats of deceased and his actions on several occasions, rendered the testimony clearly admissible from and after the date of the difficulty until the day of the homicide, and on another trial this testimony will be admitted. It is true that deceased was not armed at the time he was shot, but appellant testified that he knew deceased was a man who habitually went armed; that he believed he was armed on the day of the homicide, and was reaching for his pistol when he shot, and this testimony about deceased going constantly armed from the date of the first difficulty until the final tragedy would aid the jury in passing on the reasonableness of appellant's testimony that he believed deceased was armed. It is true that he was permitted to testify to the occasion when others told him deceased was armed, but the issue being whether or not deceased was armed virtually all the time from the date of the difficulty in February until the date of the killing, this testimony should have been admitted. However, there was no error in excluding the testimony of isolated instances of deceased having a pistol on his person, which were unknown to appellant, prior to the difficulty in February, and the beginning of the strained relations between them.

Nor was there any error in excluding the testimony as to the assault or attempted assault on Oscar Becker, appellant's son, by deceased. It would shed no light on the transaction for which appellant was on trial, as appellant is not shown to have been made aware of it prior to the fatal meeting.

What appellant said to W. W. Baines some two hours prior to the difficulty was properly excluded. His statements would be but self-serving declarations.

We think the court should have permitted the appellant to prove that at the time deceased was arrested with a pistol on him he was near the Baptist Sanitarium. Appellant does testify that he had left the sanitarium and gone to the flats some two weeks prior to this incident, but the record also makes it plain that appellant's daughter, about whom the trouble arose, was then staying at the Baptist Sanitarium. It is true appellant testified he believed his girl was pure as the driven

snow, but deceased's visits to the place where this girl was at work had caused comment, and the fact he was keeping it up after she left home should have been permitted to be proven, for a father would resent more intensely a man conducting himself in a way to render his daughter subject to reproach and the tongue of scandal if she was a pure girl than if she had perhaps not been so pure in thought and deed.

· We also think the testimony of Mrs. Gus Becker, the wife of appellant, should have been admitted. It is plain the unfriendly relations between appellant and deceased arose over deceased's conduct in going about his daughter so often. Had she been permitted she would have testified "that Gussie Becker was the unmarried daughter of witness and defendant; that prior to the assault made by deceased on the defendant on the 17th day of February, 1915, that said daughter, Gussie Becker, lived at the home of witness and defendant; that the telephone company had its public station at their home, and that their said daughter, Gussie, was the operator, and that prior to said assault and for several months prior thereto, deceased would go to the room where said telephone was located, and on several occasions shut the door and remain in the room with defendant's said daughter, Gussie Becker, sometimes as long as three hours, and was a frequent visitor to said room, to such an extent that it aroused the suspicion of witness, the mother of said daughter; that in the room at the time were two beds and that witness and defendant finally removed the beds from the room that deceased visited; that the visits to their daughter, Gussie, were so frequent that she called her husband's (defendant) attention to said fact and told him that the neighbors would likely talk about it, their daughter being single and deceased being a married man, and asked her husband (defendant) to go and speak to Hamilton (deceased) and ask him to desist from making such frequent and long visits as their actions were causing comment and would likely produce a scandal in the little village, and further, that her husband did speak to deceased in reference thereto and that the daughter became angry and left their home and has remained away ever since."

It is true, the court prevented her to so testify, but all persons who knew these facts should have been permitted to testify, for these circumstances were what brought about the unfriendly relations which culminated in the death of one of the parties.

We do not think that Elbert Roberts and J. E. Batte in their voir dire examination showed themselves qualified to testify to the general reputation of deceased as a man who went armed. It is made evident that it was but the opinion they held of the man from facts they personally knew, and from that fact alone.

There are several complaints of the charge of the court in the record, and while there is no error in the charge for which we would feel authorized to reverse the case, yet on another trial the court will apply the doctrine of reasonable doubt to the charges on threats and self-

defense, if excepted to, and requests for special charges to be given are made, as was done on this trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, JUDGE.—I concur in reversal, but am of opinion that the excluded evidence of W. W. Baines should have gone to the jury and ought not to be regarded as self-serving statements.

PRENDERGAST, PRESIDING JUDGE.—I think the court's action in excluding all evidence of appellant's general reputation for truth and veracity, under the circumstances, would not present reversible error. Miller v. State, 79 Texas Crim. Rep., 9, 185 S. W. Rep., 29; and cases cited.

### ON REHEARING.

#### December 20, 1916.

PRENDERGAST, PRESIDING JUDGE (dissenting).—Upon thorough consideration of this case upon the State's motion for rehearing, I have reached the conclusion that the rehearing should be granted and the case affirmed instead of being reversed. The State's motion for rehearing, and the brief and argument thereon by the district attorney of Harris County and his assistants and the Assistant Attorney General, so well accords with my own views that I adopt it as my opinion. It is:

"1. This court erred in holding that appellant's tenth bill, relating to the refusal of the trial court to permit him to prove his good reputation for truth, presented error, because the same under all the circumstances did not present reversible error. Appellant was only contradicted and not impeached. And the testimony of Almond, which contradicted appellant's own testimony, was not only withdrawn from the jury, but the jury were charged verbally at the very time to accept the denial of appellant that he had such conversation, *as true;* and this instruction to the jury to accept the denial *as true* was also given in writing to the jury in the general charge. These instructions to the jury are not mentioned in the opinion and we think were overlooked in considering said bill; or else the effect of such instructions were not considered in determining whether the bill presented error. There was not a mere withdrawal of the testimony of Almond, as the opinion would seem to indicate, but the withdrawal of the testimony was accompanied by the instructions to the jury just mentioned and thus accomplished all, and more, and left appellant in a better light than mere testimony as to his reputation could have done. Suppose Almond's testimony did impeach appellant, the only question for the jury would be whether Almond or appellant was telling the truth, and the only *object* where a witness is impeached in offering testimony of his reputation for truth is to convince the jury that the impeached and

not the impeaching witness was giving the truth. The supporting witnesses who testify to the good reputation for truth of the impeached witness do not purport to know the truth of the statement in dispute, and the jury might or might not infer that proof of good reputation showed that the impeached witness was correct, while in this case the contradictory statement of Almond is not only withdrawn, but the jury are directly and in terms told to accept as true the version of appellant. The object of appellant was accomplished. It should be presumed that the jury followed and obeyed the instructions of the court when nothing to the contrary is shown. The bill also shows that one witness, Jules Hirsch, had previously testified without objection that the general reputation of appellant for truth was good and that this testimony was never withdrawn. The State also urges that the testimony of Almond was not proving conflicting statements of appellant about a material fact, but was a mere conflict in the testimony. It is nowhere shown in the bill that appellant had given any version of a conversation with Almond which was favorable to himself. See Pettis v. State, 68 Texas Crim. Rep., 221, 150 S. W. Rep., 792, where appellant, as here, denied making the statement, and Zysman v. State, 42 Texas Crim. Rep., 432, 60 S. W. Rep., 669, where the witness sought to be supported admitted making the statement, and see Jacobs v. State, 42 Texas Crim. Rep., 353, 59 S. W. Rep., 1111. The fact that the testimony of Almond and appellant was in direct conflict would not authorize testimony of the good reputation of appellant for truth. Zysman v. State, 42 Texas Crim. Rep., 432, 60 S. W. Rep., 669. The trial court left the jury in *no doubt* as to the purported conversation with Almond and settled that issue squarely in *favor* of appellant by the oral and written direct instructions to the jury, and this, together with the withdrawal of Almond's testimony, prevented any error in the proceedings, and reinstated appellant and supported him more strongly on that matter than any number of mere reputation witnesses could have done. We also urge that the bill fails to show that the testimony of Almond tended to impeach appellant by proving his statements made out of court which were contradictory of his material testimony given on the trial. The time of this purported conversation with Almond was about *five months prior* to the homicide, and was unimportant and was a mere contradiction upon an immaterial matter and upon which the jury were in effect instructed that appellant's version thereof was true and that Almond's was untrue, and this instruction was given by the court as a matter of law.

"2. Because the court erred in holding that proof of isolated instances of deceased having a pistol was admissible although appellant did not know and was not informed thereof, and in holding that such testimony would aid the jury in passing on the reasonableness of appellant's testimony that he believed deceased was armed at the time of the homicide. In passing on the several bills in which this matter

was sought to be raised, the opinion reads: 'Why the court limited such proof to only two months prior to the homicide, when the evidence both for the State and defendant shows that the unfriendly relations began in February and continued until the date of the homicide, we can not understand.' In his ruling the trial court was more liberal to appellant than required by law, as will be seen if the real ruling of the court is ascertained from the bills and the qualifications thereof accepted by appellant. What were the facts?

"The bills are numbered '2,' '4' and '5½' and shows that the court permitted appellant to prove by himself and by other witnesses isolated and disconnected instances of deceased having or carrying a pistol *at any time* where it was shown that knowledge thereof was brought home to appellant by his own or other testimony, and, *in addition to this,* the court extended the rule and permitted appellant to prove any disconnected or isolated instances of deceased being seen with a pistol at any time within two months prior to the homicide, whether appellant knew of such instance or not. The *only testimony excluded* by the court was in refusing to permit appellant to prove disconnected and isolated instances of deceased having been seen with a pistol at times more than two months prior to the homicide where knowledge of the fact that deceased at such time having a pistol was *not* brought home to appellant by his own or other testimony. In Andrus v. State, 73 Texas Crim. Rep., 329, 165 S. W. Rep., 189, it was held that proof of isolated instances of deceased having a pistol is not admissible when it is not shown that such instances were *known* to the accused *prior* to the homicide. Similar to this is the ruling in Hysaw v. State, 69 Texas Crim. Rep., 562, 155 S. W. Rep., 940. The 'reasonableness of appellant's testimony that he believed deceased was armed at the time of the homicide' could not be aided by proof of facts which were unknown to appellant when he shot deceased. What operated or could have operated on the mind of appellant when he killed deceased? Facts then unknown to him? Appellant made no claim that he knew of any instance excluded. What he did not know in no way could have influenced him. His claimed belief that deceased was armed at the time of the homicide could not have been possibly influenced by things he had never heard of. The bills themselves show that the testimony excluded was of wholly disconnected and isolated instances, few in number, and were in no way *known* to appellant *when* he slew the deceased, and we most respectfully urge that the court was in error in the original opinion, and that the trial court was not only correct, but was exceedingly liberal to appellant, and was following the former holdings of this court.

"3. Because the court erred in holding that the trial court should have permitted the appellant to prove that at the time deceased was arrested with a pistol on him he was near the Baptist Sanitarium, as complained of in the seventh bill of exceptions. This incident occurred on March 16th, prior to the homicide in September, and more than

two weeks after appellant left the Sanitarium, and the State urges that in no event, in the light of the entire record, is the matter of such importance as to require a reversal, and the State further urges that the testimony excluded was in no way admissible for the purpose stated in the bill or for any other purpose, since appellant received the lowest term for murder, and the offer of this testimony was not coupled with any offer or claim that the homicide was on the first meeting after such incident, or that deceased there met or insulted the daughter of appellant, and the fact that it might, as stated in the original·opinion in this case, have aroused resentment, would in no way have benefited appellant, but would have been proof of malice, and no claim of manslaughter was made on account of such occurrence, nor does the testimony raise the issue of manslaughter on the theory of an insult to a female relation of appellant. Much stronger testimony was held correctly excluded in the cases of Howard v. State, 23 Texas Crim. App., 265, 5 S. W. Rep., 231; Cockrell v. State, 32 Texas Crim. Rep., 585, 25 S. W. Rep., 421; Wright v. State, 36 Texas Crim. Rep., 427, 37 S. W. Rep., 732; McVey v. State, 81 S. W. Rep., 740.

"4. Because the court erred in holding that the testimony set out in the eighth bill of exceptions was admissible. This bill complains of the refusal of the trial court to permit appellant to prove by his wife that several months prior to the homicide the deceased would go to a room in which the daughter of appellant worked as a telephone operator, and on several occasions would shut the door and remain in the room where the young lady was, and that she called her husband's attention thereto and asked him to see deceased with reference thereto, and that her husband did so, and that their daughter became angry and left their home and has remained away ever since. . This bill is qualified, and the qualification was accepted by appellant, with the explanation that the offer of said testimony was not coupled with any offer to prove that the homicide grew out of any insult to or relation of deceased with the daughter of appellant, and that appellant himself testified fully with reference to the same matters and testified all he desired to about his daughter and to his knowledge and information pertaining thereto, and further testified that the fact that deceased stayed in the telephone booth had nothing to do with the homicide, and that he thought and knew that his daughter was a pure girl. Appellant received the lowest term for murder, and the matters excluded occurred months before the homicide, and the proof showed that in fact appellant had met deceased many times since.

"The word 'meet' signifies that the parties were brought together into such proximity as would enable the defendant to act in the premises, whether he was armed or unarmed. Pits v. State, 29 Texas Crim. App., 374, 16 S. W. Rep., 189; Gillespie v. State, 53 Texas Crim. Rep., 167, 109 S. W. Rep., 158.

"Adequate cause may be proof of malice. Hicks v. State, 75 Texas

Crim. Rep., 461, 171 S. W. Rep., 755; Pickens v. State, 31 Texas Crim. Rep., 554, 21 S. W. Rep., 362.

"It has been frequently held that it is not error to exclude testimony of insulting words or conduct of deceased toward a female relation of the slayer if the offer of this testimony is not coupled with any offer on the part of the defendant or his counsel to show that, prior to the homicide, the same was communicated to him and thereafter he killed the deceased on his first meeting with him. Howard v. State, 23 Texas Crim. App., 265, 5 S. W. Rep., 231; Cockrell v. State, 32 Texas Crim. Rep., 585, 25 S. W. Rep., 421; Wright v. State, 36 Texas Crim. Rep., 427, 37 S. W. Rep., 732; McVey v. State, 81 S. W. Rep., 740."